# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02848

KIMBERLY CHANCELLOR,

    Plaintiff,

v.

CITY OF FORT COLLINS, a municipality, and
STEPHAN SPARACIO, in his individual capacity,

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Kimberly Chancellor, by and through her attorney David Lane of KILLMER, LANE & NEWMAN, LLP, respectfully alleges for her Complaint and Jury Demand as follows:

### I. INTRODUCTION

1. Mid-afternoon on October 6, 2017, Plaintiff Kimberly Chancellor was driving home from Front Range Community College in Fort Collins where she was studying to be a nurse.

2. During the drive home, she noticed an unfamiliar man on a motorcycle following her. He followed her into the parking lot of her apartment complex and parked next to her, making her extremely nervous. As she walked quickly toward her apartment building, the driver of the motorcycle started shouting at her.

3. Reasonably fearing for her safety, Ms. Chancellor continued to walk away until the man—off-duty Fort Collins Police Officer Stephen Sparacio—identified himself as a police officer and informed her she would be arrested and taken to jail.

4. Officer Sparacio grabbed Ms. Chancellor's arm, shoved his badge in her face, and pulled her back toward her car while demanding her license and registration.

5. Ms. Chancellor looked through her purse for her license, but maintained suspicions about Officer Sparacio's aggressive behavior so started to slowly back away from him.

6. Officer Sparacio responded by suddenly grabbing Ms. Chancellor and throwing her face-down on the asphalt. While she was prone on the ground, not resisting or threatening him in any way, Officer Sparacio pinned Ms. Chancellor to the ground with his knee and bodyweight on her back.

7. The use of force against Ms. Chancellor was grossly excessive in violation of the Fourth Amendment to the United States Constitution, and resulted from the deliberately indifferent customs, practices, training, supervision and/or discipline of Defendant City of Fort Collins.

8. Ms. Chancellor brings this action pursuant to 42 U.S.C. § 1983 against Officer Sparacio and the City of Fort Collins for violating the rights guaranteed to her by the Fourth and Fourteenth Amendments to the Constitution of the United States.

## II. JURISDICTION AND VENUE

9. This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331.

10. Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

11. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this Complaint.

### III. PARTIES

12. At all times relevant to this complaint, Plaintiff Kimberly Chancellor was a citizen of the United States of America and a resident of the State of Colorado.

13. At all times relevant to this complaint, Defendant Stephen Sparacio was a citizen of the United States and a resident of the State of Colorado. At all relevant times, Officer Sparacio was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer for Fort Collins Police Services ("FCPS").

14. Defendant City of Fort Collins ("Fort Collins") is a Colorado municipal corporation and is the legal entity responsible for itself and for FCPS.

### IV. FACTUAL ALLEGATIONS

A. *<u>Defendant Sparacio used excessive force during the arrest of Ms. Chancellor.</u>*

15. Plaintiff Kimberly Chancellor is a 27 year-old woman who lives in Fort Collins, Colorado. She is a student at Front Range Community College in Fort Collins where she is studying to be a nurse.

16. Ms. Chancellor is 5'2" tall and approximately 105 pounds.

17. Mid-afternoon on October 6, 2017, Ms. Chancellor was driving home from Front Range Community College after class.

18. While driving home, she noticed an unfamiliar man in a leather jacket following her on a motorcycle. He continued to follow her as she pulled into the parking lot of her apartment complex and parked right next to her.

19. This made Ms. Chancellor extremely nervous because he was not the tenant who parked in the spot next to hers, and she did not otherwise recognize him.

20. When Ms. Chancellor exited her car, the man shouted at her, "hey! Stop! Hey you!"

21. Reasonably fearing for her safety, Ms. Chancellor quickly walked away from the man and toward her apartment.

22. It was not until Ms. Chancellor was near the door of her apartment complex that the man informed her that he was a police officer and that he was going to arrest her and take her to jail. Ms. Chancellor immediately stopped and turned around.

23. Unbeknownst to Ms. Chancellor until that point, the man was an off-duty officer with Fort Collins Police Services—Defendant Stephan Sparacio.

24. Officer Sparacio grabbed Ms. Chancellor's arm and shoved his badge in her face. He told Ms. Chancellor that he was going to arrest her for resisting arrest.

25. Still holding on to Ms. Chancellor's arm, Officer Sparacio pulled Ms. Chancellor back toward her car and demanded that she show her identification.

26. Frightened by Officer Sparacio's aggressive behavior and worried that he was not actually a police officer, Ms. Chancellor asked Officer Sparacio if she could call the police to verify that he was an officer or call her parents. Officer Sparacio refused and demanded to see her license and registration.

27. Ms. Chancellor placed her purse on the ground and crouched down to look for her license. While doing so, she explained to Officer Sparacio that she had initially walked away from him because she did not know who he was, why he was following her, or that he was a police officer.

28. When Ms. Chancellor attempted to stand back up from her crouched position, Officer Sparacio started aggressively reaching out to grab her.

29. Feeling extremely nervous and in fear for her safety, Ms. Chancellor attempted to back away, but Officer Sparacio immediately grabbed her by the arm.

30. Officer Sparacio then violently pulled Ms. Chancellor toward him and slammed her face-down to the ground. Ms. Chancellor screamed in terror and shock.

31. Officer Sparacio pinned Ms. Chancellor down on the asphalt with his knee and bodyweight on her back, pressing her face into the gravel and twisting her arm behind her back.

32. With her free hand, Ms. Chancellor attempted to use her phone to record what was happening, but Officer Sparacio grabbed her phone and threw it away from her.

33. A bystander called 911 to report a man assaulting a woman in the parking lot.

34. Another bystander, who worked as a security guard at a nearby business, saw Officer Sparacio pursue Ms. Chancellor and heard Ms. Chancellor scream. When he walked over to the parking lot to investigate, Officer Sparacio asked him if Officer Sparacio could use his handcuffs.

35. Officer Sparacio then handcuffed Ms. Chancellor and left her on the ground.

36. Officer Sparacio called Fort Collins Dispatch for assistance and, moments later, four uniform officers arrived on the scene.

37. Ms. Chancellor's handcuffs were removed and returned to the security guard.

38. Ms. Chancellor was issued a citation for careless driving and obstructing a police officer, and then she was allowed to leave.[1]

39. Ms. Chancellor went straight to her apartment, extremely distressed and traumatized from Officer Sparacio's use of force against her.

40. Ms. Chancellor suffered from multiple cuts and bruises on her face, arms, and knees. She had an egg-sized bump and a cut on her forehead that lasted for a week, and a one- to two-inch cut on her forearm. She also had dirt in her mouth, gravel all over her face, and the sweater she wore was torn and covered in dirt.

### B. *Defendant Fort Collins' policies, customs practices, and/or lack of adequate training and supervision caused the violations of Ms. Chancellor's constitutional rights.*

41. As detailed below, it has recently been the custom and actual practice of FCPS to ratify and condone the use of excessive force by FCPS officers. As a result, it has become customary among FCPS officers to use unjustified and excessive force because FCPS has communicated to its officers that such force is authorized and, indeed, expected, and when used will be defended or covered up by the supervisory and municipal apparatus of the City

42. FCPS officers have repeatedly used excessive force against individuals like Ms. Chancellor who did not threaten or resist officers. For instance, in December of 2013, FCPS officers similarly brutalized Stanley Cropp, an eighty-year-old man with Alzheimer's disease and dementia. Mr. Cropp was aggressively, unjustifiably, and unreasonably tackled by FCPS officers while taking a walk in his neighborhood. Mr. Cropp was taken to Larimer County jail. The excessive force claims against the City of Fort Collins and FCPS settled for $113,000.

---

[1] Ms. Chancellor ultimately pleaded guilty to careless driving and the obstruction charge was dismissed.

43. In another case roughly a year before Ms. Chancellor's, FCPS officers similarly used excessive force against another member of the community. On or about October 20, 2016, FCPS officers seized Dakota McGrath, who was suspected of third-degree assault, a misdemeanor. Mr. McGrath, who had gotten out of his car and was walking in an alleyway, had earbuds in and did not hear the officer approach. The officer caught up to Mr. McGrath and struck him in the head or neck with a steel baton, causing Mr. McGrath to fall to the ground, unconscious. Mr. McGrath regained consciousness but remained on the ground, dazed, when the officer struck Mr. McGrath's leg multiple times with the baton, fracturing his leg in several places. On information and belief, the case was settled for an undisclosed amount.

44. In July of 2016, FCPS were called to Enan Joe Heneghan's house for a noise complaint. Mr. Heneghan turned down the music. The officer proceeded to search Mr. Heneghan's home without a warrant and without his consent, and unjustifiably and unreasonably pepper sprayed him in the face when he refused to show officers his ID. The City of Fort Collins settled Mr. Heneghan's case for $150,000.

45. In December 2016, with absolutely no justification, a FCPS officer violently struck Sean Slatton's lower leg with his metal baton and then seconds later pepper sprayed him in the face. By the time FCPS then wrongfully arrested Mr. Slatton, he was essentially blind and needed to go to the hospital. Because Mr. Slatton had committed no crime, all charges against him were dropped

46. On April 6, 2017, Michaella Surat was outside a bar in Fort Collins celebrating her twenty-second birthday when police officers were called regarding an altercation inside the bar. When Ms. Surat approached officers who were speaking with her boyfriend, one officer told her to "back off" and pushed her shoulder. Ms. Surat told the officer not to touch her. The officer

then grabbed and held on to Ms. Surat's wrist and put her in a rear wristlock hold. Ms. Surat repeatedly asked the officer why he was touching her and what she did wrong. The officer responded by slamming Ms. Surat face-first to the ground – clearly an excessive use of force on someone who posed no danger to the officer. Ms. Surat's chin slammed into the sidewalk, causing a concussion, cervical strain, and a large and painful contusion on her chin.

47. After video footage of Ms. Surat's encounter with FCPS surfaced, FCPS spokesperson Kate Kimble told the media that the officer used "standard arrest control." This statement makes explicit Fort Collins' custom and practice of unconstitutional use of force.

48. Last but not least, FCPS officers used excessive force in an egregious incident against Natasha Patnode, a woman accused of shoplifting at a Target store on March 29, 2018. An FCPS officer struck Ms. Patnode more than sixty times with his fist or baton while she was already on the ground and restrained. Another FCPS officer arrived and the officers tased Ms. Patnode multiple times, again while she was already restrained on the ground. The FCPS officers' use of force blatantly exceeded the Fourth Amendment's scope of reasonableness.

49. Defendant Fort Collins knew or had constructive knowledge, based on its history and widespread practice of its officers using excessive force and its condoning of those actions, that its officers would utilize excessive and unnecessary force against people like Ms. Chancellor.

50. Because Defendant Fort Collins created and tolerated a custom of deliberate indifference and has continuously failed, despite the obvious need to do so, to adequately train and supervise FCPS officers in these areas, citizens, including Ms. Chancellor, have repeatedly been subjected to violations of their constitutional rights.

51. Defendant Fort Collins has fostered "a policy of inaction" in the face of knowledge that FCPS officers were routinely violating specific constitutional rights, which constitutes the functional equivalent of a decision by Fort Collins itself to violate the Constitution.

52. Moreover, FCPS' persistent failure to meaningfully investigate and discipline numerous FCPS officers for their similar uses of excessive force reflects a custom, policy, or practice of encourage, tolerating and/or blatantly illegal and improper conduct. These encouragements, toleration of, and ratifications demonstrate that such police misconduct is carried out pursuant to the policies of and regimen of training provided by Fort Collins, and that such conduct is customary within FCPS.

53. Likewise, FCPS's deliberate and conscious failure to correct prior constitutional violations based on similar conduct constituted an affirmative choice to ratify the conduct, and to send a clear message in doing so to its law enforcement officers that such misconduct is acceptable and approved. It is Fort Collins' responsibility to properly train its officers to ensure they perform their duties correctly and to discipline, rather than ratify and encourage, their improper conduct, so that officers can learn from their mistakes and perform their jobs correctly moving forward, and be deterred from engaging in misconduct that violates the constitutional rights of people with whom the police interact. Fort Collins' failure to do so has clearly communicated to FCPS's officers, including Defendant Sparacio, that excessive force is authorized and tacitly (or explicitly) encouraged.

54. Fort Collins' past ratification and toleration of similar illegal conduct thus caused and was the moving force behind the Defendant Sparacio's use of excessive force against Ms. Chancellor.

### C. *Defendant Fort Collins is liable for Defendant Sparacio's violation of Ms. Chancellor's rights.*

55. The unlawful conduct of FCPS officers, as set forth in detail herein, amounts to a custom and widespread practice so pervasive and well-established as to constitute a custom or usage with the force of law.

56. Given FCPS's history and widespread practice of officers using excessive force, Fort Collins knew of the need to provide additional or better training and supervision in this respect and made a deliberate choice to not adequately train and supervise FCPS officers in avoiding excessive force and.

57. Fort Collins knew or should have known that its acts or omissions in this regard were substantially certain to cause FCPS officers to violate individuals constitutional rights, and it consciously or deliberately chose to disregard this obvious risk of harm in adhering to its policy and custom of failing to provide additional or better training and supervision to FCPS officers regarding how to avoid excessive force.

58. Defendant Fort Collins was deliberately indifferent to Plaintiff's constitutional rights, because Fort Collins knew that individuals in Ms. Chancellor's position would be at a substantial risk of suffering dangerous consequences from Fort Collins' failure to properly train and supervise its employees.

59. Defendant Fort Collins could have and should have pursued reasonable methods for the training and supervising of such employees, or disciplining them if they engaged in misconduct, but intentionally chose not to do so.

60. Defendant Fort Collins policy of failing to act in the face of a history of excessive force against people, and its custom, policy, and practice in failing to properly train and supervise its employees despite such history and knowledge or constructive knowledge of such

history, were the moving force and proximate cause of Defendant Sparacio's violation of Ms. Chancellor's constitutional rights.

61. Defendant Fort Collins' custom, policy, and practice of encouraging, condoning, tolerating, and ratifying excessive force, as described herein, and the subsequent cover-ups of such constitutional violations, were the moving force behind, and proximate cause of, Defendant Sparacio's violation of Ms. Chancellor's constitutional rights.

62. Defendant Fort Collin's acts or omissions caused Ms. Chancellor damages in that she suffered physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life and sense of security and individual dignity, among other injuries, damages, and losses.

63. Defendant Fort Collin's actions, as described herein, deprived Ms. Chancellor of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused her other damages.

64. All of the acts described herein were done by Defendant Sparacio intentionally, knowingly, willfully, wantonly, maliciously and/or recklessly in disregard for Ms. Chancellor's federally protected rights, and were done pursuant to the preexisting, deliberately indifferent official custom, policy, practice, training, and supervision.

## V. STATEMENT OF CLAIM FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Fourth & Fourteenth Amendment Violation – Excessive Force**
**(Against All Defendants)**

65. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

66. At all times relevant to the subject matter of this Complaint, Defendant Sparacio was acting under color of state law in his capacity as an FCPS officer and within the scope of his employment.

67. At the time when Ms. Chancellor was seized, she had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure in her person from unreasonable seizure through excessive force.

68. Defendant Sparacio is not entitled to qualified immunity. Any reasonable law enforcement officer knew or should have known of this clearly established right.

69. Defendant Sparacio's arrest of Ms. Chancellor by, among other things, grabbing her by the arm and throwing her face-first on the asphalt, used greater force than was reasonably necessary to effectuate the seizure.

70. Defendant Sparacio's use of force was objectively unreasonable in light of the circumstances confronting him.

71. Defendant Sparacio's excessive use of force caused extreme pain to Ms. Chancellor's head, forearm, and knees, which were painfully cut and bruised. She also suffered physical and mental injury, including pain and suffering, humiliation, and other injuries, damages, and losses due to Defendant Sparacio's actions. These injuries are not *de minimis*.

72. Defendant Sparacio's actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of Ms. Chancellor's federally protected rights, which entitles Ms. Chancellor to punitive damages.

73. Defendant Sparacio used excessive force in accordance with custom, policy, practice, and training provided and promulgated by Defendant Fort Collins.

74. Defendant Fort Collins established policies, customs and/or practices in violation of the Constitution.

75. Defendant Fort Collins developed and maintained law enforcement-related policies, customs, and/or practices exhibiting or resulting in a deliberate indifference to the Fourth and Fourteenth Amendment protected constitutional rights of persons in Fort Collins, which proximately caused the violation of Ms. Chancellor's constitutional rights.

76. Defendant Fort Collins failed to properly train and supervise its employees with regard to lawful seizures and lawful use of force.

77. Defendant Fort Collins has a duty to protect the constitutional rights of the members of the public from violations of those rights by members of their police department.

78. In light of the duties and responsibilities of those law enforcement officers that participate in providing safety and security for citizens and arrestees, the need for specialized training and supervision is so obvious, and the inadequacy of training and supervision is so likely to result in the violation of constitutional rights such as those described herein, that Defendant Fort Collins is liable for its failure to do so.

79. The inadequate training and supervision provided by Defendant Fort Collins resulted from a conscious or deliberate choice to follow a course of action from among various alternatives. Defendant Fort Collins could have and should have pursued reasonable methods for the training and supervising of such employees, yet failed to do so.

80. Defendant Fort Collins' policies, customs, or practices in failing to train and supervise its employees were the proximate cause of, and moving force behind, the violation of Ms. Chancellor's constitutional rights, which caused her damages as set forth above.

## VI.     PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant:

(a)     Appropriate declaratory and other injunctive and/or equitable relief;

(b)     Compensatory and consequential damages, including damages for physical injury, emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(c)     All economic losses on all claims allowed by law;

(d)     Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(e)     Attorney's fees and the costs associated with this action, as well as expert witness fees, on all claims allowed by law;

(f)     Pre- and post-judgment interest at the lawful rate to the maximum extent allowed by law; and

(g)     Any further relief that this court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Dated this 4th day of October 2019.

KILLMER, LANE & NEWMAN, LLP

*s/ David Lane*
David Lane
1543 Champa Street, Suite 400
Denver, Colorado 80202
Tel: (303) 571-1000
Fax: (303) 571-1001
dlane@kln-law.com

*Attorney for Plaintiff*